RAWLS, Chief Judge.
Defendants Richard T. Starke, Wiley Bratcher and General Finance Corporation appeal from an adverse judgment finding that they had converted certain automobiles belonging to East Lake Auto Sales Company, Inc. of Birmingham, Alabama.
Young Motors, Inc., while engaged in the automobile business in Pensacola, Florida, *401 had for several years purchased automobiles from a number of dealers including East Lake, a wholesale automobile business located in Birmingham, Alabama. Funds for making these purchases were obtained from General Finance Corporation by a method known as floor planning or trust receipt financing. Under this method whenever Young Motors purchased a car, the purchase price would be advanced by General Finance which would hold as security the trust receipt plus the title or evidence of ownership for the vehicle floor planned. Since Alabama is not a title state, but permits transfer of ownership of motor vehicles by a notarized bill of sale, it was the custom of East Lake to mail its bills of sale to Young Motors at the same time the cars were delivered, and the custom of General Finance to accept East Lake’s bills of sale as evidence of ownership.
Young Motors ordered 4 cars to be shipped from East Lake on July 2, 1964, and 4 others on July 6, 1964. These cars were shippéd and received on those dates and financed immediately in the usual manner with General Finance Corporation accepting East Lake’s bills of sale as evidence of ownership. The uncontroverted evidence is that all of East Lakes’ bills of sale for these 8 cars were received by General Finance not later than July 7, but it was not until July 10 that General Finance learned that Young Motors had not paid East Lake for the cars.
On Friday, July 10, 1964, Mr. Young called William Smith, branch manager for General Finance, to inform him that Young Motors had sent Smith two checks totaling $26,000 but that there were insufficient funds in the bank to cover payment. After a conference with Young, Smith “pulled the collateral that was held under the trust receipt” — that is, he took from Young Motors’ lot 43 cars including 6 of the 8 mentioned above. The other two had already been sold by Young Motors, one to defendant Starke and the other to defendant Bratcher. After obtaining additional bills of sale from Young Motors, General Finance sent a courier to Tallahassee on Sunday, July 12, 1964. Early Monday he obtained title certificates from the Motor Vehicle Commission for the 8 cars, including title for Starke and Bratcher showing General Finance as the first lien holder.
Meanwhile Ryder and King representing East Lake arrived in Pensacola. On Saturday, July 11, they succeeded in getting Young to sign a check predated July 9, a date prior to the day that General Finance “pulled” its collateral. On Monday, July 13, they obtained a lawyer, who after failing to locate Mr. Smith on the telephone, sent him a telegram, stating that East Lake claimed ownership and demanded return of the 8 cars. This telegram addressed to “William E. Smith, Care GFC, 730 West Garden Street,” Pensacola, was delivered to that address at 11:00 a. m. Monday. An employee of General Finance delivered it to Smith unopened at Young Motors at about 5:00 p. m. that same day — some two hours after he had sold the remaining 6 cars to Cook Motor Company.
East Lake brought suit against Young Motors, General Finance, Starke, and Brat-cher for conversion of its eight automobiles valued at $17,350.00. The trial judge, without a jury, heard the case and entered final judgment for plaintiff, East Lake, and against Young Motors for conversion of all eight cars ($17,350.00 plus interest), against General Finance for 6 cars ($12,-650.00 plus interest) and against Starke and Bratcher for the value of their cars plus interest. The form of this judgment is not questioned by this appeal.
We will first consider the controversy between General Finance and East Lake. The ultimate question to be resolved between these parties is which one was entitled to the six automobiles in light of the undisputed facts in this cause. We hold that General Finance prevails.
Trumbull Chevrolet Sales Co. v. Seawright, 134 So.2d 829 (Fla.App. 1st, 1961) controls. There, Trumbull, a franchised Chevrolet dealer domiciled in Michigan, *402 customarily sold Chevrolet automobiles for cash to O. K. Motor Company of Dresden, Tennessee. O. K. in turn sold some of the same automobiles to Florida Motor Company, a used car dealer in Pensacola, Florida. Neither of the latter two companies were franchised dealers. It was shown that when a car is sold in Michigan to a nonresident, the state of Michigan issues a temporary nonresident title certificate which is not transferable, and which is to be presented together with the statement of origin (from the manufacturer) to the title office of the state of destination within 30 days from date of issue. Florida, likewise, a title state, requires a notarized bill of sale from the franchised dealer as evidence of ownership as a condition for titling a new car.
Trumbull sold a car to O. K. Motor Co. for cash by delivering the possession of the car and accepting a check. As was its custom it retained all evidence of title (temporary title certificate and statement of origin) until the check cleared. However, payment was denied so Trumbull never did execute or deliver any documentary evidence of title such as a bill of sale. In the meantime O. K. sold the automobile (with evidence thereon that the franchised dealer was Trumbull of Detroit) to the Pensacola concern which acquired possession together with two documents. All parties agreed that one was “not genuine.” It was entitled “Duplicate Manufacturer’s Statement of Origin” and it reflected transfer from the manufacturer to Trumbull, from Trumbull to O. K., and from O. K. to the Pensacola concern. The other document was an invoice which reflected a sale of the automobile from O. K. to Florida Motor Co.
Florida Motor Company sold one of the automobiles purchased from O. K. to one Seawright who made application for an original Florida title. On that same day, Florida Motor Company learned that O. K. was in bankruptcy, became apprehensive as to the title status of some of the automobiles previously purchased from O. K., so it sought to have the automobiles titled in Alabama, a nontitle state. At the time Florida Motor Company and Seawright acquired possession of the automobile, each had clear notice that Trumbull was a former owner of the subject automobile. The principal points of law decided in Trumbull and which are applicable in the instant cause are:
1. That delivery of possession of an automobile and acceptance of a check in payment of same constituted a cash sale between Trumbull and O. K.
2. Delivery by Trumbull to O. K. made O. K. a bailee with an implied duty to return the automobile if the check bounced.
3. The sale was not consummated because the check was worthless which event rendered the contract an executory one, and title failed to pass out of Trumbull.
4. There being no sale and no transfer of indicia of title out of Trumbull its right of possession was inferior only to that of an innocent purchaser.
5. The window sticker on the subject automobile constituted a clear notice to Florida Motor Company and Seawright that Trumbull was the former owner.
6. The protection afforded an innocent purchaser relying upon the Seller’s possession is based upon estoppel, or more particularly the rule that where one of two innocent purchasers must suffer from the wrongful acts of a third, he who made the wrongful act possible must bear the loss.
7. Trumbull’s right of possession being superior to that of Seawright, who was not an innocent purchaser for value, Trumbull was entitled to possession of the automobile.
Applying the cited principles of law enunciated in Trumbull to the undisputed facts of this case, we find that there was no consummated cash sale of the eight automobiles by East Lake to Young, be *403 cause as a general rule title does not pass until payment is made. The origin of this transaction was in the State of Alabama, a nontitle state, wherein the transfer of the ownership of automobiles is normally evidenced by the seller’s notarized bill of sale. Such a bill of sale thus becomes the indicia of ownership and is the only documentary evidence required by Florida for the procurement of a Florida title for an automobile purchased from an Alabama concern. Here East Lake, an Alabama concern, delivered possession of the automobiles to Young and concurrently furnished Young all the indicia of ownership (notarized bills of sale) necessary for Young or its assignees to procure a Florida title. Young, having possession of said automobiles and indicia of ownership, utilized same in its trust receipt financing arrangement with General Finance. Clearly, East Lake parted not only with possession of the automobiles but also armed Young with the documents required by the laws of Alabama (a nontitle state) for the registration of the vehicles, which documents are recognized by Florida as a legal basis for issuance of title and accepted by General Finance for its floor planning. By such conduct, East Lake placed Young in a position to extract money from General Finance without notice by it of East Lake’s claim of interest.
East Lake strenuously contends that General Finance was put on notice that it had not relinquished all of its claims in said automobiles because the respective bills of sale contained the following printed language, viz.:
“The title of the above described vehicle remains in the name of East Lake Auto Sales until all checks clear the banks and clearing houses.”
and it further contained the typed notation after the printed words “Cash on Delivery” of “Check due.” Such language in our opinion adds nothing to the settled law as expressed in Trumbull. First we note that the printed bill of sale also contained a clause which negatives East Lake’s contention that it was retaining title. This clause reads:
“You are required by law to transfer this vehicle by tag number to your name, within ten days from date. Penalty for failure to comply.”
Secondly, the uncontroverted facts are that General Finance had for several years floor planned automobiles purchased by Young from East Lake, upon the same indicia of ownership, and title in Florida had been procured upon these notarized bills of sale without difficulty. However, Plaintiff, East Lake, who claimed that all such sales were cash sales, did not demand payment at the time of delivery of possession of the vehicles, nor did it withhold the issuance of its bills of sale, which act would have protected its title; but instead it delivered possession of the vehicles and furnished bills of sale, all carefully notarized, and then, as was its custom, waited several days for Young to forward payment. The obvious purpose of furnishing indicia of title to Young before receiving payment was to permit Young to floor plan the cars prior to making payment to East Lake.
In view of the above we find that under the facts in this case one purchasing an autqmobile from a licensed Florida used-car dealer who has both possession and indicia of title, would not be put on notice by the wording contained in East Lake’s bill of sale that East Lake had in fact retained an interest in the vehicles. To hold otherwise would put the purchaser under the duty of determining whether as a matter of law East Lake sold the cars to Young by a cash rather than credit sale, and if by cash sale whether Young paid for same by check, and if so whether Young’s check had cleared the banks. Applicable here is the maxim that where one of two innocent persons must suffer from the act or negligence of a third, he who by his conduct created the circumstances which made the wrongful act possible must bear the loss. Otherwise *404 stated, East Lake by furnishing a used-car dealer with possession of the cars plus evidence of ownership is estopped to claim that it has superior title to a purchaser or one financing the purchase of the cars relying upon ownership in the dealer.
There is some evidence that at the time General Finance repossessed its collateral, it had actual knowledge that .Young still owed East Lake for some cars. The rights of General Finance were fixed at the time it floor planned the vehicles and knowledge subsequently obtained is immaterial.
It is undisputed that defendants Starke and Bratcher had no actual knowledge of East Lake’s interest. They stand in the same, if not a better, position than General Finance.
Therefore, the judgment as it affects appellants Starke, Bratcher and General Finance Corporation is reversed.
CARROLL, DONALD K., concurs.
WIGGINTON, J., dissents.